Morphy, J.
On the 15th of March, 1843, Nicholson. Barnes filed, in the Court of Probates, of the parish of Madison, his account as administrator of the estate of Levi Blakey, which appears to have come into his hands in the year 1834. In a petition which he presented at the same time, he says, that he was ordered to file an account, in the year 1838, by the Probate Court of Concordia, which then had jurisdiction over the estate ; that he attended there with most of his vouchers to comply with such order, and waited several days, but that the Judge postponed the- matter without any fault on his part; he gives divers explanations in relation to his account, and prays that it may be homologated, and that he and his security be discharged. The usual notices having been given, an opposition was made to the account by Lawrence M. Rutledge, who represents that he is one of the heirs of Levi Blakey, and, as such, interested in the affairs of the succession; he avers that the account rendered by the administrator is incorrect, as it allows to, or claims for, said administrator 2^- per cent on $29,426 1.3, or $735 52, when $20,054 18, credits due to the estate were returned, and yet remain unadministered upon, and that his commission should be on the inventory, bad debts deducted. He prays that the account be rejected in its present shape, and that Barnes be allowed only the commissions to which he may be legally entitled. The Probate Judge allowed the full amount of the commissions charged in the account, overruled the opposition of Rutledge, and decreed him to pay costs, but neither ordered the homologation of the account, nor the discharge of the administrator and his *157 sureties. From this judgment, after an unsuccessful motion for a new trial, the opponent, Rutledge, has appealed.
The account filed by the administrator shows the sales made by him, to amount to $6370 621, and the rights and credits of the estate to $22,533 13, making together $28,903 75J, which would appear to be the whole amount of the estate; and yet he charges his commission on $29,426 13, which he states to be the amount of the inventory; but this document is not in the record. He then credits himself with payments made by him, amounting to $8675 30, as per exhibit marked A, with $20,000, as per exhibit B, and with $54 18-J-, as per exhibit C.
The appellant has filed in this court a plea of prescription, which must first be disposed of. He avers that each and every demand against the succession, for which the administrator claims credit in his account, is, and was barred by prescription, at the time of making said claims; and moreover, that all and each of said claims were prescribed, and not recoverable against said succession, at the time at which Barnes pretends to have paid them. He concludes by praying, that all the claims be disallowed, and that .there be a judgment against the administrator, and in favor of the estate for $29,426 13. How the plea of prescription can be set up, even in the Probate Court, against the items charged in an administrator’s account, as paid by him for the estate he administers upon, is not readily or easily understood. He is the legal agent of the heirs or creditors, who can from time to time, call upon him to account for the moneys that may have come into his hands. The debts which he shows that he has paid, are not claims which he has against the estate, and which he is bound to present within any given time. The relation of debtor and creditor does not properly exist between him and the estate, until, after a rendition of his accounts, a balance is struck in his favor, or against him. Whenever he voluntarily files his account, or is compelled to do so, in due course of law, he has a right to credit himself with all the sums he has paid for the estate, whatever may be the date of the payments ; and the only question which can arise is, whether such payments have been properly and legally made. If he has paid claims which were not due, because barred by prescription, or if from any other cause. *158 the creditors or heirs can make opposition to his account, and; render him liable for such claims, as having been wrongfully paid, this can be done only in the manner pointed out by law. The heirs or claimants must file their written objections, if they have any, to each item of the account to which they object, or of which they pray for the rejection. Code of Tract, art. 1004. 4 La. 300. The appellant cannot surely be permitted to object, in this court, to payments made by the administrator, when he did not oppose them below. It is true, that art. 3427 of the Civil Code, provides that prescription may be pleaded in every stage of a cause, even on the appeal, but this plea must go to the right to sue ; it must be opposed to the main action, not to collateral matters, such as the items charged as paid in an administrator’s account. Such matters must form the subject of an opposition to the account when it is filed. We cannot consider the plea of prescription set up by the appellant, in any other light than as an attempt to make, in this court, an opposition to the administrator’s account which cannot legally be done.
In relation to the commissions charged by the administrator, and allowed by the Judge, the account shows, that he returned into court 20,054 18, as uncollected, with a statement that an execution obtained on a judgment against John T. Dorsey for $4000, on the first of a series of five notes of said Dorsey, endorsed by Win. C. Dorsey ani J. Fisher, had been returned nulla bona, and that the consideration of the four other notes of $4000 each, had failed. No evidence is to be found in the record in support of this statement or allegation ; nor is it shown, or even explained, how, or in what manner, the consideration of these large notes failed. Art. 1062, allows to the administrator a commission of two and one-half per cent on the amount of the inventory, deduction being made of bad debts. Art. 1041 provides, that “ the security to be given by every administrator, shall be one-fourth beyond the estimated value of the moveables and immoveables and of the credits comprised in the inventory, exclusive of bad debts.” By bad debts are understood “those which have been prescribed against, and those due by bankrupts who have surrendered no property to be divided among their creditors.” We have in the record, neither the inventory nor the bond of the ad *159 ministrator ; yet there is enough in it to show that the credits returned do not come within the description of bad debts, as defined by art. 1041. All the credits, good or bad, of an estate, are to be* included in the inventory; although, when a bond is to be taken, those bad debts are excluded in fixing its amount, because the administrator can incur no responsibility in relation to them. Arts. 1098, 1041. All other credits, on the contrary, are to be administered upon ; that is to say, due diligence must be used to collect them. If the administrator takes no steps whatever, or they are lost to the estate through his neglect, he renders himself responsible on his bond, which covers all the credits not falling within the definition of bad debts, as given by the Code. If his diligence proves ineffectual, he is, in our opinion, entitled to charge his commission on such credits in the same manner as if he had collected them. The steps which he may have taken in relation to the claims due to the estate may have given him more trouble, and put him to more inconvenience, than any other part of his administration ; and we see no good reason why he should not receive a compensation. We understand, then, that the bad debts which are to be deducted from the inventory before he charges his commission upon it, are those defined in art. 1041, for which he gives no security, and for which he does not incur the risk of making himself liable. But, in this case, the administrator has shown no diligence whatever to collect the notes which he has returned. The mere statement, that the consideration of these notes had failed, is altogether unsatisfactory, not only in relation to his charge for commission, but also with regard to his liability for these credits, if, through his negligence, they have been lost to the heirs, as is contended by the appellant’s counsel. The incomplete state of the record, and the loose manner in which most of the vouchers have been presented, induce us, under the prayer of the opponent for the rejection of the whole account in its present shape, to remand this case, so that no injustice may be done either to the heirs, or to the administrator. We do not feel justified in homolo-gating the account before us, and discharging the administrator and his sureties, when no evidence whatever is offered in support of an item of his account forming more than two-thirds of *160 the whole estate. Justice, we think, requires that this case should be remanded.
Stockton and Steele, for the appellant.
Phillips and Bemiss, for the administrator.
It is, therefore, ordered and decreed, that the judgment of the Court of Probates be reversed, and that this case be remanded for further proceedings ; the costs of this appeal to be borne by the appellee.